IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br>1411 K Street, NW, Suite 1300<br>Washington, D.C. 20005<br><br>   Plaintiff,<br><br>  v.<br><br>**U.S. FISH AND WILDLIFE SERVICE**<br>1849 C Street NW<br>Washington, D.C. 20240<br><br>**BRIAN NESVIK**, **in his official capacity as Director of U.S. Fish and Wildlife Service**<br>1849 C Street NW<br>Washington, D.C. 20240<br><br>*and*<br><br>**DOUG BURGUM**, **in his official capacity as Secretary of the Interior**<br>1849 C Street NW<br>Washington, D.C. 20240<br><br>   Defendants. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiff, Center for Biological Diversity ("Center"), brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to finalize critical habitat protection for the Southern Sierra Nevada distinct population segment of the fisher, as required by the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*

2. The fishers of the southern Sierra Nevada are medium-sized furry carnivores that are in the same family as weasels, mink, martens, and otters. They have a light brown to black

fur coat, with white patches on their chests, broad heads, bushy tails, and small ears. They are most often found in forests with dense canopies of conifer and black oak trees on federal lands managed by the U.S. Forest Service and National Park Service.

3. Fishers were once well distributed throughout their historical range, but habitat destruction and climate change have contributed to range-wide declines of the species. Continued threats related to wildfires, increased temperatures resulting from climate change, disease and predation, exposure to rodenticides, collisions with vehicles, and potential effects associated with small population size continue to put the fisher at further risk of decline.

4. The Service listed the Southern Sierra Nevada population of the fisher as endangered on May 15, 2020. 85 Fed. Reg. 29532. This population represents the southernmost periphery of the animal's range and is genetically distinct from fishers in the remainder of North America, making it important to the species' overall genetic diversity.

5. The ESA requires the Secretary of the Interior to designate critical habitat concurrent with listing of a species, to the maximum extent prudent and determinable. 16 U.S.C. § 1533(a)(3).

6. The Service has failed to timely designate critical habitat for the Southern Sierra Nevada fisher, delaying lifesaving protections for this endangered species, and in violation of the ESA's nondiscretionary, congressionally mandated deadlines.

7. The Center brings this lawsuit for declaratory and injunctive relief, seeking an order declaring that the Service violated the ESA by failing to timely finalize a critical habitat designation for the Southern Sierra Nevada fisher, and directing the Service to finalize its overdue critical habitat designation by a date certain.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 16 U.S.C. §§ 1540(c), (g) (citizen suit provision of the Endangered Species Act).

9. This Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 16 U.S.C. § 1540(g) (Endangered Species Act).

10. As required by the ESA, 16 U.S.C. § 1540(g)(2)(C), Plaintiff provided sixty days' notice of its intent to sue over the violations of law alleged in this Complaint. Defendants have not remedied these violations of law. Therefore, an actual controversy exists between the parties under 28 U.S.C. § 2201.

11. Venue lies in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because this civil action is brought against agencies of the United States and employees of the United States acting in their official capacities under the color of legal authority. The outstanding critical habitat designation giving rise to Plaintiff's claims occur within this district and Defendants reside within this district. Plaintiff Center for Biological Diversity also maintains an office in this judicial district.

## PARTIES

12. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit, public interest environmental organization incorporated under the laws of the State of California. The Center has more than 93,000 members, including residents of counties in the southern Sierra Nevada region where the Southern Sierra Nevada distinct population of the fisher resides. The

3

Center is dedicated to the protection of native species and their habitats through science, policy, and environmental law. The Center has worked for many years to protect imperiled plants and wildlife, including the Southern Sierra Nevada population of the fisher. The Center brings this action on behalf of itself and its adversely affected members.

13. The Center has a long history of taking actions to protect fishers in the Pacific West. In November 2000, several conservation organizations including the Center petitioned the Service to list the Pacific fisher (which includes the Southern Sierra population of the fisher) as endangered under the ESA. Following numerous lawsuits by the Center and others for an array of missed deadlines and arbitrary decisions declining to list the fisher, the Service finally issued a rule protecting the Southern Sierra Nevada fisher in 2020—approximately 20 years after the Center first petitioned for federal protection.

14. The Center's members regularly use, and will continue to use, lands in and around the southern Sierra Nevada for recreational pursuits. For example, Center member Justin Augustine regularly visits and recreates in the southern Sierra Nevada mountains and enjoys visiting the area to view wildlife such as the fisher. He has visited the fisher's habitat in the Stanislaus and Sierra National Forests, and Yosemite National Park, in the hope of viewing a fisher. He travels at least once per year to areas in the southern Sierra Nevada mountains where the fisher has been detected, such as Yosemite National Park, with the goal of observing this elusive and rare species. Mr. Augustine plans to visit fisher habitat north of the Kaiser Wilderness Area, and south of Shaver Lake, as well as in Yosemite National Park, in the summer and fall of 2026 and will look for the fisher. He has been a member of the Center since 2004 and relies on the organization to protect his interests in public lands and the wildlife it supports, such as the fisher. Mr. Augustine's recreational interests are harmed by the Service's failure to

designate critical habitat for the fisher as it deprives the fisher of a key ESA protection that could help its recovery and prevent its extinction. For example, if the Court ordered the Service to finally designate critical habitat for the fisher, the national forests where the fisher lives would receive protection from threats such as logging and wildfire suppression through mandatory consultation with the Service aimed at minimizing those destructive actions.

15. The Center's members have and continue to research, study, observe, and seek protections for the Southern Sierra Nevada fisher. The Center's members derive recreational, conservation, and aesthetic benefits from the fisher's existence in the wild. Defendants' violations of law have threatened to impair recovery of the Southern Sierra Nevada fisher and degradation of habitat occupied by the species, harming the Center's and its members' interests in the fisher and its habitat. Defendants' designation of critical habitat, as required by the ESA, would redress these harms.

16. Defendant the U.S. FISH AND WILDLIFE SERVICE is the federal agency within the Department of the Interior charged with responsibility for conserving endangered and threatened species and for enforcing and implementing the ESA.

17. Defendant BRIAN NESVIK is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring the ESA is properly implemented. Director Nesvik is sued in his official capacity.

18. Defendant DOUG BURGUM is the Secretary of the Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions required by and in accordance with the ESA, including listing determinations and critical habitat designations. Secretary Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

### *Endangered Species Act*

19.     The Endangered Species Act "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). To achieve species conservation, the ESA requires the "use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id*. § 1532(3). The ESA's goal is thus to recover endangered species.

20.     To receive the protection that the ESA affords, the Service (which administers the ESA for non-marine species) must first list a species as "endangered" or "threatened." 16 U.S.C. § 1533. A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

21.     The ESA also provides for the designation of critical habitat for endangered and threatened species—the areas occupied by a species at the time of listing that contain the physical or biological features essential to the conservation of the species, or unoccupied areas that the Service determines are essential for the conservation of the species. *Id*. § 1533(b)(2); *id*. § 1532(5)(A).

22.     The Endangered Species Act requires the Secretary of the Interior to designate critical habitat concurrent with listing of a species, to the maximum extent prudent and determinable. *Id*. § 1533(a)(3).

23. Following notice of a proposed regulation considering a revision of critical habitat, the final regulation shall be published within one year, concurrently with the final regulation implementing the listing determination, with limited exceptions. *Id.* § 1533(b)(6)(A); *id.* § 1533(b)(6)(C).

24. If the Secretary determines that critical habitat is prudent but not determinable, the Secretary may extend the period for proposing critical habitat by one additional year. *Id.* § 1533(b)(6)(C)(ii). Within one year of the proposal, the Service must finalize the critical habitat designation. *Id.*

*Administrative Procedure Act*

25. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof." 5 U.S.C. § 702.

26. It further provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

**FACTUAL AND PROCEDURAL BACKGROUND**

27. Found exclusively in North America, the fisher (*Pekania pennanti*) belongs to the Mustelidae family within the order Carnivora, which also includes weasels, mink, martens, and otters.

28. Fishers are typically found in low- to mid-elevation forests composed of coniferous and mixed conifer-hardwood trees. They depend on tree cavities for denning and favor sites rich in late-successional forest features, such as snags, downed wood, and a complex mix of vertical and horizontal structures.

29. The Southern Sierra Nevada population represents the southernmost periphery of

the fisher's range. These fishers are genetically distinct from fishers in the remainder of North America (for example, Canada, Rocky Mountains, and Great Lakes). Fishers in the Southern Sierra Nevada population are distinct from those found approximately 400 miles northward in Northen California and Southern Oregon. Thus, the loss of fishers in the southern Sierra Nevada would result in a reduction of the species' overall genetic diversity.

30. Although fishers were once well distributed throughout their historical range, habitat destruction and climate change have contributed to range-wide declines of the species. Continued threats related to wildfires and wildfire suppression, increased temperatures resulting from climate change, disease and predation, exposure to rodenticides, collisions with vehicles, and potential effects associated with small population size continue to put the fisher at further risk of decline.

31. On May 15, 2020, the Service listed the Southern Sierra Nevada distinct population segment of the fisher as endangered. 85 Fed. Reg. 29532. Concurrently with this listing determination, the Service found that critical habitat was not determinable. *Id.* at 29573.

32. The Service first proposed a critical habitat designation for this population on October 19, 2021. 86 Fed. Reg. 57773. Then finding that designation of critical habitat was prudent and determinable, and "essential to the conservation of the SSN DPS of fisher," the Service proposed to designate 554,454 acres in California as critical habitat. *Id.* at 57773, 57777-78.

33. On November 7, 2022, based upon a new fisher reproductive habitat suitability model and other site-specific information received through comments, the Service proposed a revision to the 2021 proposal. 87 Fed. Reg. 66987, 66989 (Nov. 7, 2022). This revised proposal increased the proposed designation by 41,041 acres to 595,495 acres. *Id.* at 66987.

34. The Service has never finalized critical habitat for the Southern Sierra Nevada fisher.

## CAUSE OF ACTION

### Violation of the ESA & APA

35. Plaintiff hereby re-alleges and incorporates by reference each and every allegation set forth in this Complaint as if set forth in full herein.

36. The Service has a mandatory duty to designate critical habitat for the Southern Sierra Nevada fisher.

37. The Endangered Species Act requires that the Service designate critical habitat concurrent with listing to the maximum extent prudent and determinable. *See* 16 U.S.C. § 1533(a)(3). If critical habitat is not determinable, the ESA allows the Service a one-year extension to propose critical habitat, which must then be finalized within one year of the proposal. *Id.* § 1533(b)(6)(C)(ii).

38. If critical habitat is proposed separately than at the time of listing, the Service is required to issue a final critical habitat designation within the one-year period or give notice that the one-year period is being extended. *Id.* § 1533(b)(6)(A)(ii).

39. On May 15, 2020, the Service listed the Southern Sierra Nevada distinct population segment of fisher as endangered but found that critical habitat was not determinable, giving the Service a one-year extension to propose critical habitat. 85 Fed. Reg. 29532; *id.* at 29573.

40. On October 19, 2021, approximately five months after the one-year deadline, the Service finally proposed critical habitat for the Southern Sierra Nevada fisher, finding that designation of critical habitat was "prudent and determinable" and "essential" to conserve the

9

fisher. 86 Fed. Reg. at 57773, 57777-78. Although the proposal was already late, even assuming the ESA would give the Service another year from the date of the proposal, the Service was required to make a final critical habitat designation by October 19, 2022.

41. On November 7, 2022, rather than finalize its original critical habitat proposal, the Service proposed revising its original critical habitat designation following public comment. 87 Fed. Reg. 66987.

42. Under the ESA, the Service was required to finalize its revised critical habitat proposal within one year, by Nov. 7, 2023. 16 U.S.C. § 1533(b)(6)(A)(ii).

43. As of the date of this Complaint, the Service has not finalized a critical habitat designation for the Southern Sierra Nevada fisher. The Service's failure to designate critical habitat for the Southern Sierra Nevada fisher violates the ESA, 16 U.S.C. § 1533, and constitutes an agency action that has been "unlawfully withheld" within the meaning of the APA, 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff requests that this Court:

1. Declare that Defendants have violated and are violating the Endangered Species Act and the Administrative Procedure Act by failing to designate critical habitat for the endangered Southern Sierra Nevada distinct population segment of fisher;

2. Direct Defendants to propose and finalize a critical habitat by a date certain;

3. Award Plaintiff the costs of this litigation, including reasonable attorneys' fees; and

4. Provide such other such relief as this Court deems just and proper.

Respectfully submitted this 15th day of January, 2026.

/s/ Jonathan Evans
Jonathan Evans (DC Bar No. CA00044)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA  94612
Tel: (213) 598-1466
Email: jevans@biologicaldiversity.org

Andrea Zaccardi (*pro hac vice* pending)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 469
Victor, ID  83455
Tel: (303) 854-7748
Email: azaccardi@biologicaldiversity.org

Collette L. Adkins (*pro hac vice* pending)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN  55014-0595
Tel: (651) 955-3821
Email: cadkins@biologicaldiversity.org

*Attorneys for Plaintiff*

11